**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America,<br><br>    Plaintiff<br><br>v.<br><br>Brian Keith Wright,<br><br>    Defendant | 2:17-cr-00160-JAD-VCF<br><br>**Order Granting Motion in Limine to Exclude Extrinsic Evidence of 2014 Robberies**<br><br>**[ECF 130]** |

    Defendant Brian Keith Wright is charged with various crimes related to two armed jewelry-store robberies in 2017. Wright moves to preclude evidence of prior charged-but-dismissed robberies as inadmissible character evidence under FRE 404.[1] Because the government has failed to show that this evidence is admissible under FRE 404(b), I grant Wright's motion.

## Background

    Wright and co-defendants Deandre Brown and Aquail Harris are charged with the armed robberies of two Las Vegas jewelry stores: a Jared the Galleria of Jewelry store on January 3, 2017, and an MJ Christensen Jewelers store ten days later. The government theorizes that Wright masterminded these robberies, directed his co-conspirators how to carry them out, and supplied the firearms and bags for the Jared's heist.[2] In each robbery, the government alleges, "the robber(s) entered the stores armed with guns, pointed them at the employees, and demanded that the jewelry be placed in the bags. In each case, as part of the plan, getaway drivers were used. In each case, Defendant Wright waited in the vicinity until the robbery was completed."[3]

    To prove this modus operandi and Wright's identity as the mastermind of the 2017 robberies, the government plans to introduce evidence that Wright masterminded the robberies of these very

---

[1] ECF No. 130.

[2] ECF No. 139 at 2.

[3] *Id.*

same jewelry stores nearly three years earlier in the Spring of 2014.[4] Wright was charged with these crimes in this district in case No. 2:14-cr-357-APG-VCF, but those charges were dropped "pursuant to negotiation."[5] Wright moves to preclude the government from introducing this prior-bad-acts evidence.[6] The government opposes that motion, arguing that the 2014 robberies are admissible under Rule 404(b) because they show "Wright's identity, motive, intent, preparation, knowledge, and plan to commit the crime[s] charged."[7]

## Discussion

### A. Prior Bad Acts Evidence Under Rule 404(b)

Under FRE 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[8] But "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[9] In the Ninth Circuit, evidence is admissible under FRE 404(b) if the government can show that: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.[10] To satisfy the first prong's materiality requirement, the government "must articulate precisely the evidential hypothesis by which a fact of consequence

---

[4] ECF No. 139-1 (Rule 404(b) notice).

[5] ECF No. 130 at 2.

[6] *Id.*

[7] ECF No. 139 at 4.

[8] FED. R. EVID. 404(b)(1).

[9] FED. R. EVID. 404(b)(2).

[10] *U.S. v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2009) (quotation omitted).

may be inferred from the other acts evidence."[11]

**B.  The government has failed to show that extrinsic evidence of the 2014 robberies is admissible under Rule 404(b).**

The government sweepingly states that the two prior robberies are admissible for nearly all the reasons listed under 404(b)(1): "to show identity, motive, intent, preparation, knowledge, plan to commit the crime charged, and modus operandi."[12]  Its analysis, however, focuses on arguing that the 2014 robberies "prove Defendant Wright's identity through a distinctive manner of operation, or modus operandi."[13]  But when prior bad acts evidence is introduced for this purpose, the "act must be 'sufficiently distinctive to warrant an inference that the person who committed the act also committed the offense at issue.'"[14]

As the Ninth Circuit explained in *United States v. Luna*, "if the characteristics of both the prior offense and the charged offense are not in any way distinctive, but are similar to numerous other crimes committed by persons other than the defendant, no inference of identity can arise."[15]  The *Luna* court considered these robbery details and found them too "generic" to justify the admission of uncharged robberies under Rule 404(b):[16]

> The robberies were conducted takeover style, i.e., rather than robbing individual tellers and attempting to hide that fact from the rest of the bank, the robbers announced their presence to one[,] and all and took control of the bank.  The robberies all occurred between 10:30 and 11:30 a.m., and the robbers entered the banks noisily.  In each case, the robbers wore sweatpants, sweatshirts, some kind of mask, and gloves.  The robbers were armed.  At least one robber jumped over the counter.  The robbers swore at the tellers and pushed, tossed, or struck one or more bank employees.  They took money out of one or more of the

---

[11] *United States v. Arambula–Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993) (quotation omitted).

[12] ECF No. 139 at 3.

[13] *Id*. at 5.

[14] *United States v. Luna*, 21 F.3d 874, 878–79 (9th Cir. 1994) (quoting *United States v. Perkins*, 937 F.2d 1397, 1400 (9th Cir. 1991) (internal quotation marks omitted)).

[15] *Luna*, 21 F.3d at 878–79 (quoting *Perkins*, 937 F.2d at 1400 (internal quotation marks omitted)).

[16] *Id.* at 881.

> tellers' drawers and put it into bags. They used a getaway car in all of the robberies, and in both of the uncharged crimes and one of the charged crimes, they abandoned the car with its motor running.[17]

The panel reasoned that characteristics like the timing of a robbery, the use of a gun, the act of furnishing of a bag "for carrying off the proceeds," or wearing gloves or nylon-stocking masks are just "common component[s] of armed bank robbery" and mean "virtually nothing."[18]

Similarly generic crime details led the Ninth Circuit to conclude in *United States v. Perkins* that "the modus operandi of" previously dismissed robbery charges was "not sufficiently similar to the charged" robbery "to support an inference of identity and warrant admission under Rule 404(b)."[19] All of the robberies "involved a man supposedly wearing various disguises . . . , approaching the teller with something to carry away money, and warning the teller not to push any buttons."[20] These "points of similarity," the panel opined, "are so common to most bank robberies as to be entirely unhelpful," so "the requirements of Rule 404(b) were not met. . . ."[21]

The similarities that the government contends justify the admission of the 2014 robberies in this case are equally generic. Here's how the government describes the 2014 robberies:

- On April 29, 2014, "the same MJ Christensen Jewelers" store "was robbed at gunpoint by an individual name[d] Philbert Cole," who "gave the jewelry store employee several backpacks and told her to put jewelry from the display case in the bags. The employee complied," and Cole fled.
- Ten days later, Cole then robbed the same Jared's store described in the instant indictment. "Just like Defendant Aquail Harris in the Jared's robbery charged" in this case, Cole "disarmed the Jared's security guard and stole his handgun. Mr. Cole

---

[17] *Id.* at 880 (footnote omitted).

[18] *Id.* at 881.

[19] *Perkins*, 937 F.2d at 1400.

[20] *Id.*

[21] *Id.* at 1401 (quoting *United States v. Ezzell*, 644 F.2d 1304, 1306 (9th Cir. 1981)).

Page 4 of 6

|   |   |
|---|---|
| 1 | ordered his backpacks to be filled with jewelry, and then fled the store."[22] |
| 2 | • "In each case, a getaway driver was used."[23] |
| 3 | • After his arrest, Cole confessed that Wright masterminded the robberies, provided him with the guns, and "received most of the proceeds from them."[24] |

The government suggests that these 2014 details prove Wright's identity as the mastermind of the 2017 robberies of these same stores "through a distinctive manner of operation, or modus operandi."[25] It offers these details of the 2017 robberies to illustrate this "distinctive manner":

- In these robberies of the same two stores hit in 2014, similarly conducted ten days apart, "Wright . . . advised his co-conspirators which jewelry store cases in the store should be targeted," he "provided firearms for the Jared's robbery as well as the bags in which the jewelry should be placed," and he "told his co-conspirators that the guard should be disarmed at the commencement of the robbery."[26]
- And in both robberies, "the robber(s) entered the stores armed with guns, pointed them at the employees, and demanded that the jewelry be placed in the bags. In each case, as part of the plan, getaway drivers were used. In each case, Defendant Wright waited in the vicinity until the robbery was completed."[27]

I find that the overlapping characteristics identified by the government—waiting 10 days before the second robbery, using a gun, demanding the employees place the jewelry in provided bags, and using getaway drivers—are not signature details that are distinctive enough to show that these 2014 and 2017 robberies are sufficiently similar. Like the characteristics in *Luna* and *Perkins*, the details of these robberies are similar to numerous other robberies, making them unhelpful for any

---

[22] ECF No. 139 at 3.

[23] *Id*.

[24] *Id*.

[25] *Id*. at 5.

[26] ECF No. 139 at 2.

[27] *Id*.

evidentiary purpose. And these generic similarities take on even less significance because the person who entered the stores and carried out the 2014 robberies (Cole) is not the same person who entered the stores and carried out the 2017 robberies (Harris). In sum, I find that these 2014 robberies do not satisfy the materiality or similarity prongs of the Rule 404(b) admissibility test. When I consider that the Ninth Circuit has repeatedly "emphasized that extrinsic[-]acts evidence 'is not looked upon with favor'" and cautioned that the use of prior bad acts "must be narrowly circumscribed and limited,"[28] I conclude that the government has not shown that extrinsic evidence of these 2014 robberies should be admitted under Rule 404(b).[29]

## Conclusion

Because the government has failed to show that the 2014 robberies are admissible under 404(b), I grant Wright's motion to preclude the government from introducing extrinsic evidence of those robberies at trial. Accordingly, IT IS HEREBY ORDERED that Wright's Motion in Limine to Preclude Reference to Prior Bad Acts **[ECF 130]** is **GRANTED**.

Dated this 8th day of May, 2018.

_____
Jennifer A. Dorsey
United States District Judge

---

[28] *United States v. Hodges*, 770 F.2d 1475, 1479 (9th Cir. 1985) (quoting *United States v. Herrera-Medina*, 609 F.2d 376, 379 (9th Cir. 1979), and *United States v. Bailleaux*, 685 F.2d 1105, 1109 (9th Cir.1982)).

[29] I make this ruling with one notable carve-out. The government makes reference to anticipated testimony that "Defendant Wright reassured a co-conspirator in the 2017 Jared's robbery that [he] had previously successfully robbed the Jared's jewelry store in order to persuade that individual to join the conspiracy." ECF No. 139 at 5. Although the court can foresee how that witness testimony about Wright's statement could be potentially admissible under Rule 404(b) if the government can show that it is inextricably intertwined with the evidence of the 2017 Jared's robbery, the government did not make this argument. Accordingly, although, by this order, I am precluding the government from introducing extrinsic evidence in an attempt to prove that Wright participated in the 2014 robberies, I reserve until trial any ruling on this narrow issue of the admissibility of this conspiracy recruit's statement so that I can better evaluate it (and a proper limiting instruction) in light of the evidence at trial. *See, e.g., Luce v. United States*, 469 U.S. 38, 41–42 (1984) (recognizing that in limine rulings are "subject to change when the case unfolds").